**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                      :
**CRAIG McCLAURIN,**
                                                      :        <u>OPINION AND ORDER</u>
                              **Petitioner,**
                                                      :           **03 Civ. 6984 (SAS)**
          **- against -**
                                                      :
**JAMES W. WALSH, Superintendent,**
**Sullivan Correctional Facility,**                   :

                              **Respondent.**         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
**SHIRA A. SCHEINDLIN, U.S.D.J.:**

            Craig McClaurin, proceeding pro se, seeks a writ of habeas corpus

pursuant to section 2254 of Title 28 of the United States Code ("section 2254").  In

his petition[1] and subsequent addendum,[2] McClaurin claims that: (1) his guilt was

not proven beyond a reasonable doubt; (2) evidence admitted at trial deprived him

of his constitutional right to a fair trial; (3) the court's "denigration" of his counsel

deprived him of a fair trial;  (4) he received ineffective assistance of counsel; and

---

[1]         *See* Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By
A Person in State Custody ("Petition") ¶ 10(e);  Petitioner's Memorandum ("Pet.
Mem.") at 13-18.

[2]         *See* Petitioner's Addendum Claims to Petition for a Writ of Habeas
Corpus ("Pet. Add.") at 5-7.

(5) the New York depraved indifference murder statute under which he was convicted is unconstitutional. For the reasons that follow, petitioner's writ of habeas corpus is denied.

## I.     BACKGROUND

### A.     Pre-Trial Proceedings and Trial

An indictment was filed on March 24, 1994, in connection with the stabbing of Matthew Brown on the evening of February 25, 1994, in New York County. Petitioner was charged with three counts of murder in the second degree, two counts of robbery in the first degree and criminal possession of a weapon in the third degree.[3]

At trial, Hezekiah Salone, a witness for the People, testified that he saw McClaurin arguing with the decedent over drugs, he "heard a scream" and turned to see McClaurin "swing twice" "towards the upper part of [decedent's] body towards his head," and then McClaurin "snatched something" from the hands of the decedent and ran into a hotel.[4] Salone also testified that the decedent "was

---

[3]     Specifically, Indictment No. 2625/94 charged petitioner with Intentional Murder, Depraved Indifference Murder, and Felony Murder. *See* Petitioner's Appellate Division Brief, Ex. A to the Appendix in Support of Answer Opposing Petition for a Writ of Habeas Corpus ("Appendix"), at 2.

[4]     Trial Transcript ("Tr." ) at 1039-45.

trying to protect himself" when McClaurin swung at him, immediately after which the "man's head snapped" and "slumped over."[5] A "few minutes" after Salone saw McClaurin strike Brown, he saw McClaurin with "paper in his hands wiping the knife off, and the toilet paper had blood on it."[6] Furthermore, Desiree Harris, another witness, testified that later in the evening she saw McClaurin "banging on the bannister" "a little knife" which "looked like a sword."[7] Based on Harris's indication with her hands, the "knife was about "a half a foot."[8] Harris also testified that McClaurin told her, as he held the knife, "Des, I'm sick of these mother fuckers, they owe me money and won't pay me my money."[9] Finally, during the trial, a medical examiner testified that the knife recovered from McClaurin "happens to be the perfect match for the wounds on Matthew Brown's body" and "to a reasonable degree of medical certainty, that the injuries on the decedent body [] are consistent with being inflicted by that knife."[10] Finally,

---

[5]     *Id.* at 1046-47.

[6]     *Id.* at 1035.

[7]     *Id.* at 894-95.

[8]     *Id.* at 895.

[9]     *Id.*

[10]     *Id*. at 1204-05, 1265.

petitioner presented no evidence at trial.[11]

On June 15, 1995, after the trial, the Supreme Court, New York County, rendered a judgment, based on a jury verdict, convicting petitioner of "Murder in the Second Degree (New York Penal Law § 125.25[2]) and Criminal Possession of a Weapon in the Third Degree (New York Penal Law § 265.02[1])."[12] Petitioner was sentenced to "concurrent prison terms of from twenty years to life on the murder count and from three and one-half to seven years on the weapon possession count."[13]

### B.    Post-Trial Proceedings

In November 2000, petitioner appealed the judgment of the Supreme Court, arguing that his murder conviction had not been established beyond a reasonable doubt, that testimony wrongfully allowed into evidence deprived him of a fair trial, and that the court's denigration of defense counsel deprived him of a fair trial.[14]  On October 9, 2001, the New York Appellate Division, First Department

---

[11]    *See* People's Memorandum of Law in Support of Answer Opposing Petition for a Writ of Habeas Corpus ("People's Mem.") at 16.

[12]    *Id.* at 1.

[13]    *Id*.

[14]    *See* Pet. Mem. at 1.

rejected all three arguments and unanimously affirmed the judgment.[15]  On March

17, 2002, petitioner sought leave to appeal to the New York Court of Appeals,[16]

and on July 31, 2002 Associate Judge Carmen Beauchamp Ciparick denied the

petitioner's motion.[17]

On September 10, 2003, petitioner filed his original petition for habeas

corpus relief in this Court.  The first three claims in the petition are based on

arguments petitioner made in his direct appeal, to which he later added two new

claims: (1) he was denied the effective assistance of counsel; and (2) the New York

depraved indifference statute is unconstitutional.  In response to the People's

motion to dismiss the petition on the ground that it included an unexhausted claim –

the ineffective assistance of appellate counsel claim – I conditionally granted a stay

of the proceedings in a March 11, 2004 Order, permitting petitioner one last

opportunity to exhaust his ineffective assistance of appellate counsel claim.[18]

In January 2004, petitioner filed a motion to vacate the judgment of

---

[15]     *See People v. McClaurin*, 730 N.Y.S.2d 856, 856-57 (1st Dep't
2001).

[16]     *See* Ex. D to Appendix.

[17]     *See* Ex. F to Appendix.

[18]     *See* 3/11/04 Order Granting a Stay of Proceedings at 2-3.

conviction pursuant to N.Y. Criminal Procedure Law ("CPL") section 440.10,

arguing that the depraved indifference murder statute was unconstitutional as

applied to him. This motion was denied on procedural grounds by the New York

Appellate Division and leave to appeal was denied on October 8, 2004 by the New

York Court of Appeals.[19] In response to my Order, petitioner applied for a writ of

error coram nobis on May 14, 2004, raising the ineffective assistance of appellate

counsel claim before the Appellate Division, First Department.[20] On July 8, 2004,

the New York Appellate Division, First Department denied his application in its

entirety,[21] and on December 1, 2004, the Honorable Victoria Graffeo, Associate

Judge of the New York Court of Appeals, denied petitioner's request for leave to

appeal to the Court of Appeals.[22]

## II.   LEGAL STANDARD

This petition is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"). AEDPA permits a federal court to grant a writ of

habeas corpus to a state prisoner only if the state court's denial of relief "was

---

[19]     *See* Ex. I to Appendix; Ex. L to Appendix.

[20]     *See* Ex. M to Appendix.

[21]     *See* Ex. P to Appendix.

[22]     *See* Ex. S to Appendix.

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[23]

As explained by the Supreme Court, a state court decision is "contrary to" clearly established federal law if: (1) the state court reaches a different result than that mandated by the Supreme Court when presented with facts that are "materially indistinguishable from a relevant Supreme Court precedent"; or (2) the state court "applies a rule that contradicts the governing law set forth in Supreme Court cases."[24]  The "unreasonable application" prong of section 2254(d)(1) permits a federal habeas court to grant the writ,

> if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of petitioner's case. In other words, a federal court may grant relief when a state court has misapplied a governing legal principle to a set of facts different from those of the case in which the principle was announced.  In order for a federal court to find a state court's application of our precedent "unreasonable," the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been objectively unreasonable.[25]

---

[23]    28 U.S.C. § 2254(d)(1) (2005).

[24]    *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

[25]    *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. Insufficiency of the Evidence

Relying on his former counsel's appellate brief to the New York Appellate Division, petitioner asserts that the "trial evidence . . . was clearly insufficient to establish [petitioner's] guilt of murder in the second degree beyond a reasonable doubt."[26] Petitioner objects to the following findings of fact made at the state court level. *First*, he claims that Salone, a witness who testified that he saw petitioner strike the decedent, "didn't see what, if anything, was in [petitioner's] hands when he swung at the upper portion of the decedent's body."[27] Petitioner also attacks the credibility of Salone as a "career criminal" and a "paid informant."[28] *Second*, petitioner claims that testimony showed that the decedent "told police and a security guard that he was set upon by three males who tried to rob him in the vicinity of West 29th Street and Fifth Avenue,"[29] which would conflict with Salone's testimony that only petitioner struck the decedent. *Third*,

---

[26]    Pet. Mem. at 13.

[27]    *Id.*

[28]    *Id.*

[29]    *Id.* at 14.

petitioner claims that the "forensic testimony failed to match [petitioner's] knife to decedent's wounds."[30] Finally, petitioner claims that the jury "completely rejected" Salone's testimony because it "acquitted [petitioner] of the intentional murder, felony murder and robbery charged."[31]

In reviewing a petitioner's challenge to a criminal conviction when the petitioner claims that his guilt was not proven beyond a reasonable doubt, the court must "determine whether the record evidence could reasonably support a finding of guilt beyond a  reasonable doubt."[32] Thus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[33] Moreover, 28 U.S.C. § 2254(e)(1) provides that

> [i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.[34]

---

[30]    *Id.*

[31]    *Id.*

[32]    *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

[33]    *Id.* at 319.

[34]    28 U.S.C. § 2254(e)(1).

Petitioner's claim that the People did not prove that he was guilty beyond a reasonable doubt is without merit.  Based on the evidence adduced at trial viewed "in the light most favorable to the prosecution," I conclude that a "rational trier of fact could have found the essential elements" of depraved indifference murder beyond a reasonable doubt.[35]  A  person commits depraved indifference murder when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."[36]                    The People presented sufficient evidence for a rational jury to find that petitioner committed depraved indifference murder.  A rational jury could have found that petitioner engaged in a fight with the decedent over drugs, that he struck the decedent with a knife in the head and body a number of times, thereby causing decedent's death due to the stab wounds, and that, as a result, petitioner showed depraved indifference to the life of the decedent.  This account is established in the record by the testimony of Salone, who saw petitioner strike the decedent and later saw petitioner wiping blood off a knife, as well as the corroborating testimony of

---

[35]     *Jackson*, 443 U.S. at 318-19.

[36]     N.Y. Penal Law § 125.25(2).

10

Desiree Harris, who saw petitioner later that evening with a knife that "looked like a sword."[37]  Salone's and Harris's testimony, combined with the medical examiner's testimony that the knife recovered from petitioner was a "perfect match for the wounds"[38] provided a rational juror with sufficient evidence to conclude that petitioner committed depraved indifference murder.

Based on this testimony and the entire record, the Appellate Division concluded that "[t]he verdict was based on legally sufficient evidence and was not against the weight of the evidence.  Issues of credibility, including the weight to be given the backgrounds of the People's witnesses, were properly considered by the trier of facts and there is no basis upon which to disturb its determinations."[39] After reviewing the same record, I cannot conclude that the Appellate Division erred in finding legally sufficient evidence to support the jury's verdict.

### B.    Procedural Default

In his second claim, petitioner asserts that because the court allowed Desiree Harris to testify that she had been threatened by petitioner's friends and brother, absent proof of petitioner's complicity, petitioner was deprived of his right

---

[37]    Tr. at 1035, 1039-47, 894-897

[38]    *Id.* at 1204-05.

[39]    Appellate Division Decision, Ex. C to Appendix.

to a fair trial under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, and Article I, section 6 of the New York Constitution, and section 12 of the New York Civil Rights Law.[40]  However, on October 9, 2001, the Appellate Division, First Department rejected this claim on the ground of procedural default, and, alternatively, on the merits.[41]

A federal court generally may not review a state court decision that expressly relies on procedural default as an independent and adequate state ground for dismissal.[42]  This rule applies even where the state court has provided an alternative ruling based on the merits of the claim.[43]  A rationale for the adequate and independent state ground doctrine is the "important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them."[44]

---

[40]     Pet. Mem. at 16-17.

[41]     *McClaurin*, 730 N.Y.S.2d at 856-57.

[42]     *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000).

[43]     *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding.").

[44]     *Coleman*, 501 U.S. at 750.

Due to a prior procedural default, namely the failure to preserve his claim for appellate review, this Court cannot review McClaurin's federal claim that he was deprived of a fair trial because the trial court permitted Harris to testify about threats made against her. On October 9, 2001, the New York Appellate Division, First Department, concluded that McClaurin's challenge to Harris's testimony was "unpreserved," for appellate review and therefore "decline[d] to review it in the interest of justice."[45] Thus, the Appellate Division's finding of a procedural default bars this Court from considering the merits of McClaurin's claim, notwithstanding the Appellate Divisions's alternative holding that McClaurin's claim lacked merit.[46]

Despite the existence of a procedural default, a federal court may review a prisoner's federal claim if the "prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[47] As explained by the Supreme Court:

---

[45] *McClaurin*, 730 N.Y.S.2d at 856-57.

[46] *See id.* ("Were we to review this claim, we would find that testimony of the threat was properly admitted to show the witness's state of mind, after defendant opened the door to such testimony.").

[47] *Coleman*, 501 U.S. at 750.

> [T]he question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington* . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.[48]

McClaurin has failed to demonstrate either "cause" for the default and "prejudice," or a "fundamental miscarriage of justice." Because McClaurin's trial counsel was not constitutionally ineffective[49] and no objective factor impeded his counsel's ability to raise a specific objection to the testimony that he advanced on appeal, petitioner has failed to demonstrate the cause needed to excuse his procedural default. Furthermore, a "fundamental miscarriage of justice" occurs only in extraordinary cases "'where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"[50] Petitioner cannot possibly show that he is actually innocent given the substantial evidence of guilt presented at

---

[48]     *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

[49]     *See infra*, Part III. D.

[50]     *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir. 1993) (quoting *Murray*, 477 U.S. at 496).

his trial.  McClaurin has therefore failed to satisfy either the cause and prejudice or fundamental miscarriage of justice exceptions to the procedural bar rule. Accordingly, McClaurin's claim that he was deprived of a fair trial is hereby dismissed as procedurally forfeited.

### C.    Denigration of Counsel

Relying on the brief from his direct appeal, McClaurin asserts that he was deprived of a fair trial and due process under the Fifth and Fourteenth Amendments of the United States Constitution and Art. 1, § 6 of the New York State Constitution due to the trial judge's alleged "denigration" of petitioner and his counsel.  McClaurin argues that in the jury's presence the "trial court referred to defense counsel's cross examination of the informant Salone as 'garbage,' commented that defense counsel's cross-examination of the medical examiner was 'completely off the wall' and accused the defense counsel of having 'wasted a half hour on absolutely nothing."[51]  McClaurin also asserts that the trial judge referred to petitioner as a "half-baked jerk" before the trial began and outside the presence of the jury.  Petitioner argues that the trial court's "demeaning of counsel," attitude and behavior "cast a pall of suspicion" over the petitioner's case.

---

[51]    Pet. Mem. at 18.

When reviewing a claim that a defendant was deprived a fair trial because the court repeatedly denigrated defendant's attorney in the presence of the jury, a "court should only reverse [a defendant's] conviction based on [the judge's] conduct if 'the judge's behavior was so prejudicial that it denied [defendant] a fair, as opposed to a perfect, trail (sic).'"[52]  Thus, the court reviewing the record is "not to determine 'whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid.'"[53]  Instead, the court must determine "whether the jury was so impressed with the judge's partiality to the prosecution that it became a factor in determining the defendant's guilt, or whether 'it appeared clear to the jury that the court believed the accused is guilty.'"[54]

After reviewing the record, I conclude that the Appellate Division reasonably applied federal and state law in determining that the trial judge's remarks did not deprive petitioner of a fair trial.  On direct appeal, the Appellate Division

---

[52]     *United States v. Amiel*, 95 F.3d 134, 146 (2d Cir. 1996) (quoting *United States v. Robinson*, 635 F.2d 981, 984 (2d Cir. 1980)).

[53]     *Id.* (quoting *United States v. Pisani*, 773 F.2d 397, 402 (2d Cir. 1985)).

[54]     *Id.* (quoting *United States v. Nazzaro*, 472 F.2d 302, 303 (2d Cir. 1973)).

rejected petitioner's argument that he was deprived of a fair trial because of the trial judge's remarks. The Appellate Division concluded:

> The court's brief disparagement of defense counsel, which was the product of counsel's conduct, did not deprive defendant of a fair trial (*see, People v. Gonzalez*, 38 N.Y.2d 208). The court's comment regarding defendant, while better left unsaid, was not prejudicial since it was made out of the jury's presence.[55]

*First*, the Appellate Division reasonably concluded that petitioner was not deprived of a fair trial despite the trial judge's statement that petitioner was a "half-baked jerk." Indeed, as the court concluded, the jury could not have been prejudiced by comments made outside of its presence. Moreover, "comments by the judge in the absence of the jury, even if unwarranted, furnish no basis for reversal."[56]

*Second,* the Appellate Division reasonably concluded that the trial judge's remarks to defense counsel did not deprive petitioner of a fair trial because the "brief disparagement" was a "product of [defense] counsel's conduct."[57] Although the Appellate Division did not address each specific comment made by

---

[55]     *McClaurin*, 730 N.Y.S.2d at 857.

[56]     *United States v. Roldan-Zapata*, 916 F.2d 795, 807 (2d Cir. 1990) (citing *United States v. DiTommaso*, 817 F.2d 201, 221 (2d Cir. 1987)).

[57]     *McClaurin*, 730 N.Y.S.2d at 857.

the trial judge to defense counsel, the challenged comments occurred during two brief exchanges: first, during the cross-examination of Salone; and second, during the cross-examination of the medical examiner.

In the first exchange, petitioner asserts the "trial judge referred to defense counsel's cross-examination of the informant Salone as 'garbage.'"[58] However, given the full context in which the trial judge used the term "garbage," the Appellate Division reasonably concluded that the court's brief disparaging remark was a "product of defense counsel's conduct."[59]     Toward the end of defense counsel's cross-examination of Salone, the following exchange transpired:

Q.     In that information, they took that information and they gave it to a judge, am I right? You know how it works.  You have been an informant since what year, '89?
A.     Yes.

Q.     You gave information to the police.  Now what they do is they take the information and they put it down in an affidavit and they give it to a judge for a search warrant, am I right?
A.     I don't know how it works.

Q.     Come on. You don't know that?
A.     No I don't.

Q.     You mean to tell me of all the times that you worked with all these agencies that you worked for, you didn't know that the information

---

[58]     Pet. Mem. at 18.

[59]     *McClaurin*, 730 N.Y.S.2d at 857.

you were giving them at the time was being used for search warrants.
A.    No, I didn't.

Q.    What did you think they did with this information?
A.    Wrote it down.

Q.    And what *filed it G for garbage?*
A.    I don't know

    THE COURT: Come on, Mr. Fusco.
    MR. FUSCO: Judge, please don't limit me.

    THE COURT: The *garbage* I'm hearing I'm hearing from you.
    MR. FUSCO: I move for a mistrial. How could you accuse the defense of being *garbage*.

    THE COURT: *I'm alluding to your conduct.*
    MR. FUSCO: I want to be heard out of the presence of the jury.  This is cross-examination.

    THE COURT: The cross-examination is concluded.  We will resume at two o'clock.  The jury is now excused.[60]

Based on this exchange, it is clear that the judge used the term "garbage" only after defense counsel used "garbage" in a repetitive and sarcastic line of questioning that the judge was justified in terminating.  A critical point in this exchange was when the judge responded to Fusco's question "How could you accuse the defense of being garbage?" by stating that "I'm alluding to your conduct."  Apparently, the "conduct" the judge was alluding to was repetitive and

---

[60]    Tr. at 1184-86 (emphasis added).

improper questioning of the witness.  Although the judge's remarks may have conveyed to the jury that Fusco's line of questioning was pointless, these remarks hardly suggested to the jury that Fusco was "unworthy of respect and attention,"[61] as petitioner asserts.  Moreover, although the trial judge's remarks may have been "stern or sarcastic," they were nevertheless "appropriate responses to counsel's improper questioning of witnesses" and "not likely to cause a juror to feel the judge believed [the defendant] to be guilty."[62]

In the second exchange, Fusco was cross-examining Dr. Sterbenz, a medical examiner who had examined the decedent.  Petitioner asserts the judge "commented that defense counsel's cross-examination of the medical examiner was 'completely off the wall' and accused defense counsel of having 'wasted a half hour on absolutely nothing.'"[63]  Once again, given the context of the overall exchange, it was reasonable for the Appellate Division to conclude that these remarks were a product of defense counsel's conduct.  Both statements were made during a heated and argumentative exchange between Fusco and the trial judge.

---

[61]     Petitioner's Appellate Division Brief, Ex. A to Appendix, at 18.

[62]     *Roldan-Zapata*, 916 F.2d at 807.

[63]     Petitioner's Appellate Division Brief, Ex. A to Appendix, at 18 (quoting Tr. at 1290 and 1292).

The heated exchange erupted after the trial judge sustained an objection to Fusco's question in which Fusco asked Dr. Sterbenz whether a person's addiction or need for a fix would effect his behavior - a question unrelated to "the medical conditions that [Sterbenz] examined."[64]  After the judge explained why the objection was sustained, Fusco stated "Judge, he testified to –", to which the Judge responded "We're not going to go into matters that are completely off the wall, Mr. Fusco."[65]  After that statement, Fusco continued to challenge the judge despite warnings by the judge to "stop it right now," and "don't argue with me."[66]  Eventually, when Fusco asked whether he could "ask any more questions," the judge replied "Not with respect to the matter you are going into now.  You have wasted a half hour on absolutely nothing."[67]

Because Fusco refused the trial judge's request to stop arguing with him, it was reasonable to conclude that Fusco's conduct provoked the judge's comment about wasting "a half hour on absolutely nothing." [68]  Furthermore, while

---

[64]     Tr. at 1290.

[65]     *Id.*

[66]     *Id.* at 1290-91.

[67]     *Id.* at 1291.

[68]     *Id.* at 1292.

the judge could have used less hyperbolic or stern words than "completely off the wall"[69] to describe the line of questioning for which he had sustained an objection, it was reasonable for the Appellate Division to conclude that such a statement did not deprive petitioner of a fair trial.  Based on the whole record, including the remarks that McClaurin alleges are prejudicial, I conclude that the Appellate Division reasonably determined that the challenged remarks did not deprive petitioner of a fair trial or due process.

### D.    Ineffective Assistance of Counsel

The Sixth Amendment guarantees a fair trial and competent counsel in all criminal prosecutions.[70]  The Sixth Amendment "'stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not still be done.'"[71]  In judging any claim of ineffectiveness, a reviewing court must begin with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," taking a "highly deferential" view of

---

[69]    *Id.* at 1290.

[70]    *See* U.S. Const. amend. VI.

[71]    *Gideon v. Wainwright*, 372 U.S. 335, 343 (1963) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 462 (1938)).

counsel's performance without the benefit of hindsight.[72]

To prove that counsel was constitutionally ineffective, a petitioner must satisfy the two-part test established in *Strickland.* A petitioner must first show that his counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms."[73] To fall below this standard, counsel must have made "errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[74] The second prong requires a petitioner to show that he was prejudiced by his counsel's conduct. To show prejudice, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[75]

McClaurin claims that he was deprived of effective assistance of counsel because his appellate counsel did not argue on direct appeal that: (1) petitioner was deprived of a fair trial when the court curtailed his attorney's cross-examination of an informant and a medical examiner; and (2) petitioner was denied

---

[72]     *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[73]     *Id.* at 688.

[74]     *Id.* at 687.

[75]     *Id.* at 694.

his right to due process when the judge failed to submit the charges of intentional murder and depraved indifference murder in the alternative.[76]

Regarding both of petitioner's ineffective assistance of counsel arguments, petitioner has failed to demonstrate that the state court's denial of relief "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[77] As the People argue, the New York Appellate Division, which denied petitioner's coram nobis petition, normally applies Supreme Court precedent in reviewing ineffective assistance of counsel claims by following *Strickland*.[78] Given that the People argued that *Strickland* was the proper standard,[79] and petitioner has not argued that the Appellate Division applied the wrong standard, I conclude that the Appellate Division properly applied *Strickland*.

Furthermore, defendant has not demonstrated that the Appellate

---

[76]      *See* Pet. Add. at 5-7.

[77`]      28 U.S.C. § 2254(d)(1).

[78]      *See* People's Mem. at 45 (citing *People v. De la Hoz*, 520 N.Y.S.2d 386, 388 (1st Dep't 1987)).

[79]      *See id.* at 46 (citing Ex. N to Appendix at 5-7).

Division's denial of petitioner's ineffective assistance of counsel claim "involved an unreasonable application" of *Strickland*. Rather, the Appellate Division's denial of petitioner's claim was completely reasonable. The petitioner's attorney did not fall below "an objective standard of reasonableness" under "prevailing professional norms"[80] when he failed to raise two constitutional arguments during the direct appeal. Although petitioner's appellate counsel had no duty to raise every nonfrivolous argument that could be made,[81] petitioner can only establish that his counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."[82]

On both claims, petitioner has failed to show that his appellate counsel omitted significant and obvious issues or that he pursued clearly and significantly weaker issues. Although petitioner's counsel failed to raise two arguments on direct appeal, counsel did raise three other constitutional arguments on direct appeal. Given that the three constitutional arguments raised by counsel are the same arguments pressed by petitioner in this motion, it would be difficult for

---

[80]     *Strickland*, 466 U.S. at 688.

[81]     *See Jones v. Barnes*, 463 U.S. 745, 754 (1983).

[82]     *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

petitioner to prove that the issues pursued by the appellate counsel were "clearly and significantly weaker" than the omitted issues. Nor does petitioner make such an argument. Instead, it appears that petitioner's appellate counsel "winnow[ed] out weaker arguments"[83] and focused on issues that were more likely to succeed. In fact, the two claims that petitioner asserts should have been raised are quite weak, and therefore it was not objectively unreasonable for petitioner's appellate counsel to omit them during the appeal.

Regarding petitioner's first claim, petitioner asserts he was deprived of a fair trial in violation of the Confrontation Clause when the court curtailed his attorney's cross-examination of an informant and a medical examiner.[84] However, with respect to the cross-examination of the informant, it appears that the trial judge permissibly limited the counsel's examination because counsel had asked the witness an inappropriate, repetitive and somewhat sarcastic question.[85] As the Supreme Court stated, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the

---

[83]    *Barnes*, 436 U.S. at 751-54.

[84]    *See* Pet. Add. at 6-8.

[85]    *See* Tr. at 1185-86; People's Mem. at 47.

issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."[86]  With respect to the informant, the judge's limitation on cross-examination was not unreasonable.

Similarly, the trial judge permissibly limited counsel's line of questioning of the medical examiner because it was beyond the scope of the medical examiner's knowledge of the decedent.  As the judge explained in sustaining an objection to a question by petitioner's counsel, the medical examiner was "testifying with respect to . . . the deceased's condition and the medical conditions that he examined," and that it was improper to ask the medical examiner how a person's need for "a fix" of drugs to which he is addicted would effect his behavior.[87]  Given the broad discretion a trial judge has to limit the testimony of an expert witness, I conclude that it was not improper for the judge to limit counsel's line of questioning.[88]  In addition, it was not improper for the judge to end counsel's cross-examination because the judge found that petitioner's counsel "had

---

[86]     *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

[87]     Tr. at 1290-92.

[88]     *Roldan-Zapata*, 916 F.2d at 805 (stating that under Federal Rule of Evidence 702 a "trial judge has broad discretion" in limiting an expert witness's testimony, and the trial judge's "actions will be sustained unless 'manifestly erroneous.'").

an ample opportunity" to question the examiner on the last line of questioning counsel expressed an interest in pursuing.[89] Thus, petitioner's right to confront the witness was not violated, and his attorney had no duty to raise that argument on appeal.[90] Additionally, as to the second prong of *Strickland*, petitioner has not demonstrated that he was prejudiced by his appellate counsel's decisions. Given the discretion the trial judge had to limit the testimony of the informant and the medical examiner, there is not a "reasonable probability" that but for his counsel's error, "the result would have been different"[91] had counsel raised them on direct appeal.

Petitioner's second claim is that his appellate counsel failed to argue that the judge did not submit the charges of intentional murder and depraved indifference murder in the alternative. However, the record directly contradicts petitioner's assertion because the judge explained to the jury that it could only find McClaurin guilty of either intentional murder or the depraved indifference murder.[92] The judge told the jury:

---

[89]    Tr. at 1299.

[90]    *See Roldan-Zapata*, 916 F.2d at 806.

[91]    *Strickland*, 466 U.S. at 687.

[92]    *See* Tr. at 1488.

> You will be considering, as I indicated, the first count, which is intentional homicide. If you find the defendant not guilty of intentional homicide, the first count of the indictment, you will address the second count, which is the depraved indifferent (sic) count, as I have just enunciated it. If you find the defendant guilty – that is, the intent to commit the murder – you need not address the second count of the indictment which is the depraved indifference count.[93]

As the People assert, the jurors evidently followed the judge's instruction because they acquitted McClaurin of intentional murder, but found him guilty of depraved indifference murder. Given that the judge charged the jury in the alternative on the two murder counts, petitioner's appellate counsel clearly had no duty to raise a claim that the judge failed to charge the jury in the alternative. Additionally, as to the second prong of *Strickland*, petitioner was not prejudiced by his attorney's failure to bring a claim so clearly lacking in merit. Petitioner has not shown a "reasonable probability" that the result would have been different but for counsel's failure to raise petitioner's very weak constitutional claim regarding the jury charge.[94] Therefore, the Appellate Division's denial of McClaurin's ineffective assistance of counsel claim was not an unreasonable application of *Strickland*.

---

[93]    *Id.*

[94]    *Strickland*, 466 U.S. at 687.

### E. Procedural Default of the Challenge to the Depraved Indifference Statute

Due to a procedural default in state court, this Court may not consider McClaurin's constitutional challenge to New York's depraved indifference murder statute. On May 3, 2004, the Supreme Court of New York, New York County denied McClaurin's motion to vacate the judgment, stating that his motion was "based upon grounds and issues previously determined upon an appeal from this judgment and those not so reviewed, the defendant unjustifiably failed to raise on appeal."[95] On October 8, 2004, the Appellate Division denied petitioner's permission to appeal the order of the Supreme Court, stating that "there is no question of law or fact presented which ought to be reviewed.[96]

As the People correctly assert, when a state court has rejected a defendant's claim on the basis of Criminal Procedure Law section 440.10(2)(c), such a finding serves as an adequate and independent state court ground that prevents a federal court from considering the claim.[97] Thus, given that the New

---

[95] 5/3/05 Decision and Order Denying CPL § 440.10 Motion, Ex. I to Appendix at 1 (citing CPL §§ 440.10(2)(a); 440.10(2)(c)).

[96] Ex. L to Appendix.

[97] *See Roman v. Abrams*, 822 F.2d 214, 222 (2d Cir. 1989) ("Section 440.10(1)(h) authorizes the court in which a judgment of conviction was entered to grant a motion to vacate the judgment on the ground that it was obtained in

York Supreme Court expressly relied on a state procedural default to deny

McClaurin's claim, this Court cannot consider the merits of his claim,[98] despite the

fact that the Appellate Division "silently denied" relief without mentioning

procedural default.[99]

Additionally, petitioner has not sufficiently demonstrated cause and

prejudice or a fundamental miscarriage of justice, and therefore this Court cannot

reach the merits of petitioner's claim.[100] As to cause, petitioner's only argument is

that after his direct appeal two cases from this district held the New York depraved

indifference murder statute was unconstitutionally vague, and that due to "an

intervening change in the law" he "cannot be faulted for failing to raise such claims

---

violation of a defendant's constitutional right. Section 440.10(2)(c), however,
requires the court to deny such a motion when there has been no appellate review
of the argument because of the defendant's unjustifiable failure to raise it on
appeal.").

[98]     *See Coleman*, 501 U.S. at 729.

[99]     *Roman,* 822 F.2d at 222 ("When the default occurred at the trial level,
this Court has construed the silent denial of relief by a state appellate court to be on
the procedural ground when the state had opposed the petitioner's argument on the
ground of procedural default. . . . This construction is equally applicable when the
default occurred at the appellate level, the state has opposed collateral relief on the
basis of a provision such as N.Y. Crim. Proc. Law § 440.10, and the state court
has silently denied collateral relief.") (citations omitted).

[100]    *See Coleman*, 501 U.S. at 750.

at the time of [petitioner's] appeal."[101]  However, the Second Circuit has

subsequently reversed both decisions on the basis of procedural default.[102]  Fatal

to petitioner's attempt to show cause is that he has not demonstrated that his

"constitutional claim [wa]s so novel that its legal basis [wa]s not reasonably

available to counsel,"[103] as the depraved indifference murder statute has been

challenged as unconstitutionally vague and upheld in several previous cases.[104]

Finally, as addressed earlier, petitioner cannot demonstrate a fundamental

miscarriage of justice.  Because of the substantial evidence of petitioner's guilt,

petitioner cannot demonstrate that the alleged constitutional violation "probably

---

[101]     1/20/04 McClaurin Affidavit, Ex. G to Appendix at ¶ 11; *St. Helen v. Senkowski*, No. 02 Civ. 10248 (S.D.N.Y. 2003); *Jones v. Keane*, No. 02 Civ. 1804, 2002 U.S. Dist. LEXIS 27418, at *16 (S.D.N.Y. May 22, 2002).

[102]     *See St. Helen v. Senkowski*, 374 F.3d 181, 182-84 (2d Cir. 2004); *Jones v. Keane*, 329 F.3d 290, 296 (2d Cir. 2003).

[103]     *Reed v. Ross*, 468 U.S. 1, 15 (1982).  *Accord Jackson v. Leonardo*, 162 F.3d 81, 84 (2d Cir. 1998).

[104]     *See, e.g.*, *People v. Johnson*, 87 N.Y.2d 357, 361 (1996) (rejecting defendant's claim that the New York depraved indifference murder statute is unconstitutionally vague); *People v. Cole*, 85 N.Y.2d 990, 992 (1995) (same). Recently, however, the New York Court of Appeals has reversed several depraved indifference murder convictions on the ground that the statute did not apply where there was a specific intent to commit murder.  *See, e.g., People v. Payne*, 786 N.Y.S.2d 116 (2004); *People v. Gonzalez*, 775 N.Y.S.2d 224 (2004); *People v. Hafeez*, 762 N.Y.S.2d 572 (2003).

resulted in the conviction of one who is actually innocent."[105]  Accordingly,

petitioner's claim that New York's depraved indifference murder statute is

unconstitutional is hereby dismissed as procedurally forfeited.

## IV.    CONCLUSION

Finally, there is the question of whether to grant a certificate of

appealability.  For a certificate of appealability to issue, petitioner must make a

"substantial showing of the denial of a constitutional right."[106]  "A "substantial

showing" does not require a petitioner to demonstrate that he would prevail on the

merits, but merely that "reasonable jurists could debate whether . . . the petition

should have been resolved in a different manner or that the issues presented were

'adequate to deserve encouragement to proceed further.'"[107]  Petitioner has made

no such showing in this case.  Accordingly, I decline to grant a certificate of

appealability.  The Clerk of the Court is directed to close this case.

---

[105]    *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir. 1993) (quoting *Murray*, 477 U.S. at 496).

[106]    28 U.S.C. § 2253(c)(2).

[107]    *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002), *cert. denied*, 538 U.S. 950 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted)).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:  New York, New York
          June 3, 2005

**- Appearances -**

**Petitioner (Pro Se):**

Craig McClaurin
# 95-A-4545
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, New York 12733

**For Respondent:**

Mary C. Farrington
Assistant District Attorney
One Hogan Place
New York, New York 10013
(212) 335-9000